IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 3:23-cr-00017 |
| KATHRYN DREY | |
| Defendant. | |

## FACTUAL BASIS FOR PLEA

The parties stipulate that the allegations contained in the Information and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of these facts beyond a reasonable doubt.

1. The United States Attorney's Office for the Northern District of Florida (USAO-NDFL) was a part of the United States Department of Justice and the Executive Branch of the United States.

2. The USAO-NDFL was responsible for the prosecution of criminal cases brought by the Federal government, the prosecution and defense of civil cases in which the United States was a party, and the collection of debts owed to the Federal government that were administratively uncollectible.

1

FILED IN OPEN COURT THIS
3-28-23
CLERK, U.S. DISTRICT
COURT, NORTH DIST. FLA.

3. The USAO-NDFL could retain the services of outside contractors to assist in litigating its cases.

4. Defendant **KATHRYN DREY** was an Assistant United States Attorney ("AUSA") in the Civil Division of the USAO-NDFL. From on or about February 3, 2019, until approximately March 2021, **KATHRYN DREY** was the Chief of the Civil Division for the USAO-NDFL.

5. As an AUSA, defendant **KATHRYN DREY** had the authority to request bids from companies for contracts with the USAO-NDFL, and depending on the amount of the expenditure, approve payment for said companies. As a supervisor, she also had authority to review and approve expenditures requested by attorneys in the Civil Division.

6. The Civil Division of the USAO-NDFL defended the interests of the United States in foreclosure lawsuits in Florida and elsewhere.

7. As an AUSA, defendant **KATHRYN DREY** completed annual ethics training, which included training on conflicts of interest and the prohibitions contained in 18 U.S.C. § 208.

8. Individual 1 was married to defendant **KATHRYN DREY**.

### *Company A*

9. Company A was a Florida limited liability company and a title-closing company for real estate transactions, located in Pensacola, Florida, within the

Northern District of Florida. A title-closing company has the responsibility for ensuring that all the documents related to the ownership of properties are in order before real estate transactions are executed, among other things. A title-closing company also provides an agent to oversee the closing process during real estate transactions.

10. Individual 1 purchased a 50% interest in Company A in January 2017 and purchased the remaining 50% interest in September 2017.

### *Company B and Company C*

11. Company B was an Alabama limited liability company. Company B was primarily a title-closing company for real estate transactions with locations in Alabama.

12. Company C was owned by the same individual as Company B. Company C was primarily a title-closing company for real estate transactions with locations in Florida. (Company B and Company C collectively referred to herein as "Company B")

13. Individual 1 was retained as an attorney for Company B for approximately one year in 2016. Individual 1 was again retained by Company B in and around January 2020. Individual 1 was not an owner of Company B.

### *Conflict of Interest*

14. On or about August 22, 2018, defendant **KATHRYN DREY** directed a contract for litigation expenses between the USAO-NDFL and Company A.

15. Defendant **KATHRYN DREY** did not request or receive a waiver under 18 U.S.C. §208(b)(1) concerning the contract for litigation expenses between the USAO-NDFL and Company A.

16. On or about September 21, 2018, the USAO-NDFL authorized payment of $1,000 to Company A.

17. Defendant **KATHRYN DREY** sought to award government contracts to Company B to perform title searches.

18. Individual 1 received approximately two-thirds of the funds paid to Company B by the USAO-NDFL for performance of the title search contracts.

19. Defendant **KATHRYN DREY** did not disclose to her supervisors or members of the finance or administrative offices at the USAO-NDFL that Company B would pay her husband, Individual 1, a portion of the funds paid to Company B by USAO-NDFL for performance of the title search contracts.

20. Defendant **KATHRYN DREY** informed the USAO-NDFL that it needed to conduct title searches on defendants' properties in foreclosure litigation. She claimed Company B was the only title company willing to complete title searches for the USAO-NDFL at an affordable rate.

21. Although defendant **KATHRYN DREY** communicated with Individual 1 and others at Company B on the USAO-NDFL title search contracts, defendant **KATHRYN DREY** did not reference Individual 1 as a point of contact to others at the USAO-NDFL.

22. In or about February 2020, defendant **KATHRYN DREY** recommended to administrative staff at the USAO-NDFL that the title search contract be awarded to Company B.

23. On or about February 10, 2020, at defendant **KATHRYN DREY's** recommendation, the Executive Office of the U.S. Attorneys ("EOUSA") awarded, on behalf of USAO-NDFL, the first title search contract to Company B for Litigative Consultant Services to conduct records title searches for real property relating to ongoing civil cases and provide opinions on real property and liens.

24. Ten additional contracts and contract modifications were executed between the USAO-NDFL and Company B for the same consultant services on or about, February 21, 2020; February 28, 2020; March 25, 2020; April 22, 2020; September 1, 2020; October 21, 2020; November 6, 2020; and December 3, 2020.

25. On February 20, 2020, defendant **KATHRYN DREY** emailed members of the USAO-NDFL, "I think it is easier for us to only have one person contact the title company and for us to ask for one person there to be designated the

contact. I have already reached out to them. . ." She then identified one of the officers of Company B as the point of contact.

26.  On March 13, 2020, Individual 1 emailed the staff at Company B that the owner of Company B had asked him to schedule a meeting in part to "bring y'all in on an ongoing project I have secured for [Company B] with the US Attorney's Office."

27.  On or about September 15, 2020, Individual 1 prepared and sent an invoice to the USAO-NDFL, for 22 title searches and requesting payment of $3,300. The invoice was issued in the name of Company A, instead of Company B. The USAO-NDFL notified defendant **KATHRYN DREY** it could not pay this invoice as there was no contract with Company A, on September 22, 2020. On the same day, defendant **KATHRYN DREY**, emailed Individual 1 "Can you PLEASE fix this ASAP?" from her government email address. On September 23, 2020, defendant **KATHRYN DREY** explained the incorrect invoice in an email, writing, "[Company B] bought some stuff from [Company A] and their new person pulled the wrong standard invoice."

28.  As payment for the performance of the title search contracts awarded to Company B by EOUSA on the recommendation of defendant **KATHRYN DREY**, between in and around March 2020 and December 2020, the United States deposited $45,150 in Company B's bank account ending in -9714.

29. On or about March 19, 2020, Individual 1 withdrew $12,000 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation of **KATHRYN DREY**.

30. On or about March 19, 2020, Individual 1 deposited $12,000 from Company B's bank account into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

31. On or about April 23, 2020, Individual 1 wrote a check to himself for $11,600 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation of **KATHRYN DREY**.

32. On or about April 23, 2020, Individual 1 deposited $11,600 from Company B's bank account into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

33. On or about June 16, 2020, Individual 1 wrote a check to himself for $1,000 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation of **KATHRYN DREY**.

34. On or about June 26, 2020, Individual 1 deposited $1,000 from Company B's bank account into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

35. On or about October 16, 2020, Individual 1 transferred $2,200 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation of defendant **KATHRYN DREY**, into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

36. On or about November 25, 2020, Individual 1 transferred $2,100 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation of **KATHRYN DREY**, into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

37. On or about January 4, 2021, Individual 1 wrote a check to himself for $1,200 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation of **KATHRYN DREY**.

38. On or about January 6, 2021, Individual 1 deposited $1,200 from Company B's bank account into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

39. On or about January 22, 2021, Individual 1 transferred $1,600 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation of defendant **KATHRYN**

**DREY**, into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

40. On or about February 26, 2021, Individual 1 transferred $1,600 from Company B's bank account ending -9714 from the payment for the title search contracts awarded to Company B on the recommendation defendant **KATHRYN DREY**, into a bank account ending -6329, which he owned jointly with defendant **KATHRYN DREY**.

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

LAUREN CASTALDI
NICHOLAS W. CANNON
Trial Attorneys
Public Integrity Section
U.S. Department of Justice

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Factual Basis for Plea fully.

I have read every word of this Factual Basis for Plea. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Factual Basis for Plea, and declare under penalty of perjury that it is true and correct.

Date: 3/21/2023

Kathryn Drey
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Factual Basis for Plea and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Factual Basis for Plea as true and accurate.

Date: 3/27/23

Timothy Jansen
Counsel for Defendant Kathryn Drey

10